IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MELICOR HAZZARD,<br><br>Plaintiff,<br><br>v.<br><br>CORY K. SPRINGMAN, JOHN VARGA, and DANIEL NEWMAN<br><br>Defendants. | Case No. 3:18–cv–50227<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Melicor Hazzard, brings this action under 42 U.S.C. § 1983 against three employees of the Illinois Department of Corrections (IDOC) who worked at the Dixon Correctional Facility—Warden Varga and Correctional Officers Springman and Newman. Hazzard alleges violations of his First and Eighth Amendment rights. Compl., Dkt. 1. Defendants move for summary judgment on all claims. Mot. for Sum. Judg., Dkt. 95. For the following reasons, Defendants' motion for summary judgment is granted.

**I. Background**[1]

In 2017 Melicor Hazzard was an inmate in the custody of the Illinois Department of Corrections (IDOC) at the Dixon Correctional Facility (Dixon). P.'s

---

[1] The following facts are undisputed except where noted. Plaintiff frequently fails to respond properly to Local Rule 56.1 statement of facts, according to this Court's standing order, those facts deemed admitted. Iain D. Johnston, Standing order on Summary Judgment Motions, https://www.ilnd.uscourts.gov/judge-info.aspx?Bt1LmR2QgBbCj2VD6w9tXA==

1

SOF, Dkt. 96, ¶ 1. On February 25, 2017, Defendant Springman and Officer Galor were on duty in the command office ("the bubble") of Hazzard's housing unit. Dep. Springman, Dkt. 96-2, 32:18–24 – 33:1–5. That day, Springman observed Hazzard violate Rule 16–115, which limits inmates to getting ice from the housing unit ice machine only "one cup at a time." Dep. Galor, Dkt. 96-3, 38:3–15; Dep. Springman, Dkt. 96-2, 30:2–14. Defendant Springman and Officer Galor testified that inmates are aware of Rule 16-115 because the rule is posted either on the ice machine itself, or in the window of the bubble, and is also given to each inmate upon their arrival to Dixon in their inmate handbook. Dep. Springman, Dkt. 96-2, 30:10–14, 64:15–23; Dep. Galor, Dkt. 96-3, 27:1–11. Ice is a valuable commodity in Dixon, so this rule helps to avoid conflict among inmates and to prevent the ice machine from breaking because of overuse. Def. SOF, Dkt. 96 ¶ 6.

Springman approached Hazzard to address the Rule 16-115 violation and ordered Hazzard to stop and speak with him. Dep. Springman, Dkt. 96-2, 38:3–22. Springman "gave [Hazzard] three direct orders to speak with [him]," but Hazzard continued to walk away telling Springman to "get off his bumper" and "why don't you get the fuck on". Dep. Springman, Dkt. 96-2, 37: 7–22, 62:14–18. Springman followed Hazzard to his cell and stopped in the hallway near the cell door. Def. SOF, Dkt. 96, ¶ 36. The parties have different versions of what happened next. Hazzard claims that Springman told him that he was tired of Hazzard writing grievances and that he would meet him "on the other side" if he continued to write grievances. P.'s SOF, Dkt. 102, ¶ 6. But Springman testified that it was Hazzard who

2

threatened to "find [him] on the outside." Dep. Springman, Dkt. 96-2, 53:14–22. This was the first, last, and only interaction between Hazzard and Springman. Def. SOF, Dkt. 96-1, 33:9–13.

Springman returned to the bubble and filed an Incident Disciplinary Report ("IDR") citing Hazzard for insolence, intimidation/threats, disobeying direct orders, and violating Rule 16-115. Dkt. 96-7, Exh. 7. According to standard policy, after Springman filed the IDR, his supervisor was notified, who determined the IDR should be elevated to the adjustment committee for further investigation. Dep. Springman, Dkt. 96-2, 13:15–23. The adjustment committee found Hazzard guilty of insolence for his comment of "Why don't you get the fuck on" and guilty of violating Rule 16-115 for filling up more than one cup of ice at a time, the other charges were dismissed. Dkt. 96-7, Exh. 7. The adjustment committee issued Hazzard a C grade punishment for these infractions, meaning Hazzard had restricted access to the gym, yard, and commissary, for one month. Def. SOF, Dkt. 96 ¶ 39. It is standard procedure that the officer who writes the IDR is not informed of the adjustment committee's findings. Dep. Springman, Dkt. 96-2, 62:5–8.

In sworn testimony, Warden Varga stated that he never met with, or received any communications from Hazzard relating to the February 25th incident. Decl. John Varga, Dkt. 96-6, Exh. 6 at 1. But Hazzard claims he notified Varga about the February 25th incident by writing letters to his office, still Varga denies ever receiving Hazzard's letters. Warden Varga asserts that the first time he became aware of the incident was after Hazzard filed a complaint with the Illinois State

3

Police, which prompted Warden Varga to instruct the Dixon internal affairs department to open an investigation into the complaint. Decl. John Varga, Dkt. 96-6, Exh. 6 at 1. It is standard procedure to have internal affairs open an investigation whenever an allegation is made against an officer by an inmate. *Id.* The investigation report completed by an internal affairs lieutenant concluded that the allegations in the grievance against Springman were unsubstantiated. Def. SOF, Dkt. 96 ¶ 45; Dkt. 96-5, Exh. 5.

## II. Motion for Summary Judgment

### Legal Standard

A successful motion for summary judgment demonstrates that there is no genuine dispute of material fact and judgment is proper as a matter of law. A party opposing summary judgment must proffer specific evidence to show a genuine dispute of fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the non–movant when viewing the record and all reasonable inferences drawn from it in the light most favorable to the non–movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the existence of just *any* disputed facts will not defeat an otherwise proper motion for summary judgment. *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001). Rather, the disputed facts must be both "genuine" and "material." *Id.* A fact is material if it might affect the outcome of the suit under governing law. *Id.* If the nonmoving party fails to establish the existence of an element essential to his case, summary judgment must be granted

for the moving party. *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

A party opposing summary judgment "is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts, but not every conceivable inference." *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987). The court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). But mere speculation or conjecture will not defeat a summary judgment motion. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 466 (7th Cir. 2016). The court does not "judge the credibility of witnesses, evaluate the weight of the evidence, or determine the truth of the matter." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009). Summary judgment is appropriate only when the court determines that "no jury could reasonably find in the nonmoving party's favor." *Blasius v. Angel Auto, Inc.*, 839 F.3d 639, 644 (7th Cir. 2016).

**Analysis**

Hazzard brings claims under § 1983 claiming civil rights violations when he was an inmate in Dixon. First, Hazzard argues that Defendant Springman violated his First Amendment rights by writing a frivolous disciplinary ticket and verbally threating him because of grievances Hazzard filed against other officers. Defendant Springman argues he is entitled to summary judgment on this claim because Hazzard cannot present sufficient evidence to establish a claim for retaliation.

Second, Hazzard argues that Defendants Newman and Varga violated his Eighth Amendment rights by failing to protect him from a substantial risk of serious harm by allowing Defendant Springman to continue to work in Hazzard's housing unit after becoming aware of the February 25th incident. Defendant Newman argues that he is entitled to summary judgment because he had no personal involvement in the incident. Defendant Varga argues he is entitled to summary judgment because he opened an investigation into Hazzard's claim and therefore was not deliberately indifferent to a substantial risk of harm. For the following reasons, summary judgment is granted on all claims.

**1. Retaliation – Defendant Springman**

Hazzard contends that in retaliation for grievances he filed against *other* officers in the past, Springman wrote frivolous disciplinary tickets and verbally threated him, all in violation of Hazzard's First Amendment rights to free speech. Springman moves for summary judgment because he asserts that Hazzard cannot establish the elements for a First Amendment retaliation claim. Specifically, Springman argues that Hazzard cannot establish a causal connection between the First Amendment speech and the alleged adverse actions, and that Hazzard was not deterred from engaging in First Amendment speech. Def. Mot. for Sum. Judg., Dkt. 97.

To prevail on a First Amendment retaliation claim, Hazzard must show: (1) that he engaged in a protected First Amendment activity; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3)

6

causation, that the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). However, a prisoner who satisfies these three elements will not prevail on a retaliation claim if the defendant can show that he would have taken the same action absent the protected activity. *See Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013); *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011).

To determine if a plaintiff suffered a deprivation that would likely deter future First Amendment activity, an objective test is applied: "whether the alleged conduct by the [defendant] would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). Even if a specific plaintiff is not deterred from engaging in First Amendment activity, this persistence will not undermine a retaliation claim. *Douglas*, 665 F.3d at 646. Threats and harassment that are non-trivial and designed to deter future speech and penalties for past speech are actionable forms of retaliation. *Beatty v. Henshaw*, 826 Fed. Appx. 561, 563 (7th Cir. 2020); *Piecynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989). To establish the third element, causation, a plaintiff "must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988). If plaintiffs rely on suspicious timing, they must show that the adverse action "follows close on the heels of the protected expression" and "the person who decided to impose the adverse action knew of the

7

protected conduct." *FKFJ*, 11 F.4th at 586 (quoting *Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001)). Suspicious timing alone is rarely sufficient to create a triable issue, but an inference of causation can be drawn if "no more than a few days elapse between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). A plaintiff also must present evidence that absent a retaliatory motive, things would have occurred differently. *Id.* at 965. If retaliatory animus was a factor, the burden shifts to the defendants to prove that the same punishment would have occurred in the absence of the protected speech. *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). If the defendant provides a legitimate reason for his action, then "the burden shifts back to the plaintiff to demonstrate that the proffered reason [is] pretextual and that the real reason was retaliatory animus". *Milliman v. City of McHenry*, 893 F.3d 422, 431 (7th Cir. 2018). However, calling a defendant untruthful without any other evidence does not satisfy the plaintiff's burden at summary judgment. *Moran v. Calumet City*, 2022 U.S. App. LEXIS 32509, at * 18 (Nov. 23, 2022).

Springman prudently concedes that Hazzard's grievances are protected speech. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996) (inmates have a First Amendment right to seek administrative or judicial remedies of conditions of confinement). So, the first element is met.

As to the second element, Springman argues that Hazzard has no evidence to satisfy his burden because Hazzard admits he was not personally deterred and

8

continued to file additional grievances. Dep. Hazzard, 69:17–21; Mot. for Sum. Judg., Dkt. 97, at 8. But it is irrelevant that Hazzard was not deterred and persisted with filing grievances. *Douglas*, 964 F.3d at 646. Instead, the question is whether a person of "ordinary firmness" would be deterred, not whether Hazzard was personally deterred. *Id.* The deprivation that Hazzard experienced was a one-month restriction of access to the gym, yard, or commissary. Def. SOF, Dkt. 96 ¶ 39. Hazzard points to *Delaney v. DeTella*, to support his contention that the denial of access to the gym and yard for one month would deter a person of ordinary firmness from continuing to file grievances. P. Resp. to Sum. Judg., Dkt. 103, at 6. This case, however, does not advance Hazzard's position. In *Delaney*, the court found the denial of a prisoner's yard privileges for six months was severe enough to amount to a constitutional violation. *Delany v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). But the court also recognized that short-term denials of exercise privileges are not severe enough to amount to a constitutional deprivation. *Id.* at 683; *Pearson v. Ramos*, 237 F.3d 881, 885 (7th Cir. 2001) (imposing consecutive 90-day periods of no-yard privileges for separate misconduct violations is not cruel and unusual punishment); *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986) (no deprivation for 30-day denial of exercise privileges). In this case, no reasonable jury could find that a one-month restriction of gym, yard, and commissary access would deter a person of ordinary firmness from filing future grievances. *Douglas,* 964 F.3d at 647 ("Whether retaliatory conduct is sufficiently severe to deter is generally a question

9

of fact, but when the asserted injury is truly minimal, we can resolve the issue as a matter of law.")

Although Hazzard and Springman had only one short interaction on February 25th, Hazzard argues that he was subjected to a "campaign of harassment and retaliation against him for exercising his constitutional rights by filing institutional grievances." Compl., Dkt. 1, at 6. A campaign is a connected series of operations designed to bring about a particular result. "*Campaign*," MERRIAM-WEBSTER'S ONLINE DICTIONARY 2022, https://www.merriam-webster.com/dictionary/campaign (last visited Dec. 2, 2022). But the "campaign of harassment and retaliation" Hazzard claims occurred references the one incident with Springman on February 25th. Dep. Hazzard, Dkt. 96-1, 61:2–9. In fact, February 25th is the sole personal interaction between Hazzard and Springman. Def. SOF, Dkt. 96-1, 33:9–13. Even after Hazzard filed a grievance against Springman, the two did not have any subsequent interactions despite Hazzard seeing Springman "every day that he worked." Dep. Hazzard, Dkt. 96-1, 33:14–21. Because there was only one incident, the Court concludes that Hazzard was not subjected to a "campaign of harassment and retaliation."

The third necessary element for a claim of retaliation is that the First Amendment activity was "at least a motivating factor" in Defendant's decision to take the retaliatory action. *FKFJ,* 11 F.4th at 585. To satisfy the third element, Hazzard relies on suspicious timing and argues that he would not have been disciplined for violating Rule 16-115 absent his history of filing grievances against

other officers. P. Resp. to Sum. Judg., Dkt. 103, at 9–10. He further argues that causation may be inferred because he filed a grievance ten days before the adverse action. Springman, however, argues that this is not sufficient evidence to show a causal connection between Hazzard's grievances and the February 25th incident.

The court agrees with Springman. The record shows that the February 25th incident occurred because Hazzard committed two punishable infractions: first, a violation of Rule 16-115 for filing up more than one cup of ice, and second, Hazzard behaved in an insolent manner when Springman approached him to address the Rule 16-115 violation. Springman also argues that because an adjustment committee found Hazzard guilty of these two infractions and disciplined him with a one-month C grade punishment, this is evidence that the disciplinary ticket was non-frivolous and a reasonableness response to Hazzard's actions. Dep. Springman, Dkt. 96–2, 30:2–14, Dkt. 96-7, Exh. 7. Taken together these violations provide a reasonable explanation for Springman's actions and evidences that he would have written a disciplinary ticket on Hazzard even if Hazzard had never filed any grievances, dooming Hazzard's retaliation claim. *Zellner*, 639 F.3fd at 379.

Hazzard admits that Rule 16–115 was posted on February 25th but argues that because he was not previously disciplined for violating Rule 16-115, the disciplinary ticket was just a pretext so Springman's could retaliate against him for his protected speech. Dep. Hazzard, Dkt. 96-1, 59:9–13; P.'s SOF, Dkt. 102 ¶ 3. But claiming that Springman is being untruthful without providing evidence to support this claim is not enough to defeat summary judgment. *Moran*, 2022 U.S. App.

11

LEXIS 32509, at * 18. Further weakening Hazzard's claims is his admission that he was aware of the rule and simply chose to ignore it; even if he was not disciplined for past violations of rule does not mean that when the rule is enforced it is pretextual. Holding otherwise would be antithetical to the purpose of rules and laws in civilized society. Laws are enacted to be followed even in the absence of its enforcement by an official. Not being punished for a rules violation cannot be used as evidence of retaliation when punishment eventually occurs for a violation. Such a theory would mandate total enforcement at all times to avoid the risk of a retaliation claim.

Taking the facts in the light most favorable to Hazzard, he still fails to present evidence that Springman would not have issued Hazzard a disciplinary ticket absent his previously filed grievances. *Kidwell*, 679 F.3d at 965. The Court does not believe that a lapse of ten-days between the protected speech and the adverse action is sufficient to find an inference of causation. *Kidwell*, 679 F.3d at 965–66 (Adverse action must follow "close on the heels" of the protected speech and "no more than a few days" can elapse to raise an inference of causation.) Without this evidence, the Court does not see a causal connection between Hazzard's protected speech and the February 25th incident. *Mays*, 719 F.3d at 634. Therefore, Hazzard has not met his burden to state a claim for retaliation. *FKFJ*, 11 F.4th at 586. For these reasons, Springman's motion for summary judgment is granted.

**2. Failure to Protect**

Hazzard claims that Defendant Newman and Warden Varga violated his Eighth Amendment rights when they failed to protect him from Springman. To state an Eighth Amendment claim against a prison official, the plaintiff must show: (1) that he suffered an objectively serious injury; and (2) that he was incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). If the plaintiff establishes that the conditions were sufficiently serious, he must then demonstrate that "the prison official acted with deliberate indifference to the conditions." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2007). Negligence or even grossly negligent behavior is not enough, a prison must have acted with the equivalent of criminal recklessness. *Borello*, 446 F.3d at 747. Prison officials may be liable only if they know that an inmate faces a substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. "Deliberate indifference requires evidence that an official *actually* knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Guzman v. Sheahan*, 495 F.3d 852, 860 (7th. Cir. 2007) (emphasis added) (quoting *Pierson v. Hartley*, 391 F.3d 898 902 (7th Cir. 2002)). This is a high bar, "because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brown*, 670 F.3d 816, 821 (7th Cir. 2012)). Even if a prison official is actually aware of a substantial risk of serious harm, evidence that the

13

defendant responded reasonably to the risk negates an assertion of deliberate indifference. *Rasho*, 22 F.4th at 710; *Guzman*, 495 F.3d at 857; *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)).

The allegation against Warden Varga is that he knowingly continued to allow Springman to work in Hazzard's housing unit, even after Hazzard filed an emergency grievance with Warden Varga. Compl., Dkt.1., at 7. Hazzard claims that Warden Varga was put on notice of a substantial risk of harm because he sent letters to his office, although he admits that he is unable to provide any evidence that Warden Varga received or actually read any of his letters. Hazzard Dep., Dkt. 96–1, 40:5–20.

But even viewing the facts in the light most favorable to Hazzard and accepting that Warden Varga read Hazzard's letters alerting him to the February 25th incident and was aware of the incident before the Illinois State Police complaint, his claim fails. The evidence shows that Warden Varga took reasonable steps to address the incident. *Rasho*, 22 F.4th at 710 (reasonably responding to a risk negates an assertion of deliberate indifference). Warden Varga followed standard protocol and opened an internal affairs investigation, which is a reasonable response to an unconfirmed allegation, and is the only way to determine if the claim has merit. A trier of fact could not characterize the reasonable response of following protocol and opening an investigation as being deliberately indifferent to knowledge of a substantial risk of serious harm. *See Farmer*, 511 U.S. at 847; *see also Sinn v. Lemmon*, 911 F.3d 412, 423–24 (7th Cir. 2018) (holding that no

14

reasonable juror could infer deliberate indifference where prison officials took sensible steps to address unsafe prison conditions).

Hazzard brought this claim against Warden Varga because he wanted Warden Varga to remove Springman from his housing unit or "lay him off for a few days" and felt that he did not receive justice when neither of these actions were taken. Hazzard Dep., Dkt. 96-1, 43:15–24; 44:1–7. But the internal affairs investigation concluded that the claims were unsubstantiated and therefore, no disciplinary action was necessary. *See*, Dkt. 96-5, Exh. 5; Decl. John Varga, Dkt. 96-6, Exh. 6 at 1. There are no allegations that the investigation was improperly conducted or even delayed. Instead, Hazzard disagrees with the outcome of the investigation, i.e., the decision not to pursue disciplinary actions against Springman. Merely disagreeing with the outcome of an investigation does not give rise to a constitutional claim. *Winston v. Price*, 2016 U.S. Dist. LEXIS 150475, at \*10 (S.D. Ill. Oct. 31, 2016); *Mack v. Herrington*, 2014 U.S. Dist. LEXIS 129290. at \*11 (S.D. Ill. Sep. 16, 2014) (inmates have no constitutional rights right to demand that a prison warden take disciplinary action against an employee.)

Hazzard names Officer Newman as a defendant, but the Court finds no reason to include him in this suit. Similarly, Hazzard points to no evidence that Newman was in anyway involved in the incidents allegedly giving rise to a constitutional violation. Liability under § 1983 requires the plaintiff "to establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Officer Newman can

15

only be liable for his own misconduct. *Perez v. Fenoglio*, 792 F.3d 678, 781 (7th Cir. 2015). The record shows that Newman was not assigned to, nor did he participate in the investigation of Hazzard's complaint. Dep. Newman, Dkt. 96-4, 13:1–15, 52:13–20. Hazzard also fails to make any specific allegations against Newman for misconduct. Based on Hazzard's dearth of input on the matter, it appears that Hazzard named Officer Newman as a defendant simply because he was an employee in the internal affairs department. *See* Dkt. 96-1, 45:6–19. Instead, in Hazzard's response brief he attempts to side-step Newman's argument that Newman has no connection to this case by simply not responding to the argument. *See* P. Resp. to Sum. Judg., Dkt. 103. In fact, the only mention of Newman in Hazzard's response brief is in a heading. *Id.* Because Hazzard fails to respond to Newman's argument, this claim is waived. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007 ("[A] party forfeits any argument it fails to raise in a brief opposing summary judgment.") This strategy, also illustrates that there is no genuine dispute of facts regarding Officer Newman and because he has no personal involvement with the February 25th incident, he cannot be held liable under § 1983. *Gentry*, 65 F.3d at 561; *Perez*, 792 F.3d at 781.

For these reasons, summary judgment is granted on the Eighth Amendment claims against Defendants Varga and Newman.

## III. Conclusion

For these reasons, the motion for summary judgment brought by Defendant Springman, Varga, and Newman is granted.

The Court thanks assigned counsel for their help with this case.

Date: December 2, 2022

_____
Honorable Iain D. Johnston
United States District Judge